[Civ. No. 4078. Fourth Dist. Mar. 19, 1951.]

O. F. MEFFORD, Respondent, v. CITY OF TULARE et al., Appellants.

Maddox & Abercrombie, Erling H. Kloster and John R. Berryhill for Appellants.

Harold D. Mefford for Respondent.

MUSSELL, J.—Plaintiff, as owner of a 38-acre tract of land in the city of Tulare, brought the instant action, under the declaratory relief provisions of section 1060 of the Code of Civil Procedure, to test the validity of a city ordinance, which, insofar as here material, provides as follows:

"Subdividers of any acreage now or hereafter subdivided shall be required to furnish Profile Map, showing proposed subdivision drainage, etc., for approval of City Engineering Department as to good engineering practice, and shall furnish and install their own sewer and water facilities within the boundaries of the subdivision at the expense of the owner or subdivider. Such installations shall be made in accordance with plans approved by the City Engineer, and subject to inspection by the City before acceptance of the project for maintenance by the City."

There is no dispute as to the material facts. The city of Tulare has been a charter city since 1923 and in February, 1949, the registered voters thereof voted upon and passed the ordinance in question (No. 572). This ordinance had been proposed by way of an initiative petition. Plaintiff filed no tentative subdivision map with any city official or board and had taken no affirmative action to comply with the ordinance or the Subdivision Map Act (Bus. & Prof. Code, div. 4, pt. 2, ch. 2).

Plaintiff alleged in his complaint, among other things, that he was "desirous of subdividing and improving" his tract, but that "the defendants will refuse to provide water and sewer facilities for said real property by any procedure except that prescribed by said ordinance, and that defendants uphold and assert the validity of said ordinance." It is alleged that by reason of these facts an "actual controversy" existed between the parties. It is further alleged that the ordinance is void in that it was adopted without appropriate power in the electorate of the city to enact such an ordinance by an initiative measure.

The trial court concluded that plaintiff was entitled to declaratory relief and that ordinance No. 572 of the city of Tulare was adopted as an initiative measure without appropriate power in the electors of the city. Judgment was

awarded in favor of plaintiff, decreeing that the questioned ordinance was null and void as against the plaintiff and that the defendants be restrained and enjoined from enforcing it against him.

Defendants appeal from the judgment, contending that (1) The case is not a proper one for declaratory relief; and (2) That the ordinance involved is a valid exercise of the initiative powers of the electorate. We cannot agree with appellants' first contention.

██ The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation and whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion. ██ Unless a clear abuse of discretion is shown, the trial court's decision will not be disturbed on appeal. (*Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442, 448 [211 P.2d 302].) As was said in *Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 729 [146 P.2d 673, 151 A.L.R. 1062]: ''The purpose of a declaratory relief judgment is 'to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.' '' (Citing cases.) ██ The complaint herein states a cause of action for declaratory relief under the rules announced in the foregoing decisions. The relief sought by plaintiff is available to him even though he failed to file a tentative subdivision map or take steps to comply with the ordinance. This is so because it does not appear that such action would have been speedy and adequate or so well suited to plaintiff's needs as declaratory relief. The remedies provided by the statute are cumulative and declaratory relief may be asked alone or with other relief. (Code Civ. Proc., §§ 1060-1062; *Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753, 761 [161 P.2d 217, 162 A.L.R. 747].)

██ The remaining material question before us is whether or not the ordinance involved is within the initiative powers of the electorate of the city of Tulare. Our conclusion is that the enactment of the ordinance was and is a valid exercise of such powers and that the trial court erred in decreeing it to be null and void.

Article IV, section 1 of the California Constitution reserves to the people of the state the initiative power and also reserves such powers to cities and counties in the following language:

''The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and

county, city and town of the State, to be exercised under such procedure as may be provided by law. . . . Nothing contained in this section shall be construed as affecting or limiting the present or future powers of cities or cities and counties having charters adopted under the provisions of section eight of Article XI of this Constitution.''

The Constitution further provides that chartered cities are empowered

''. . . to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to all other matters they shall be subject to and controlled by general laws. . . .'' (Cal. Const., art. XI, § 6.)

As was said in *City of Grass Valley* v. *Walkinshaw*, 34 Cal. 2d 595, 598, 599 [212 P.2d 894]:

''The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; and the enumeration of powers does not constitute an exclusion or limitation. (*West Coast Advertising Co.* v. *San Francisco*, 14 Cal.2d 516, 521-522, 525 [95 P.2d 138] and cases cited; *City of Oakland* v. *Williams*, 15 Cal.2d 542, 550 [103 P.2d 168]; *San Francisco* v. *Boyd*, 17 Cal.2d 606, 617-618 [110 P.2d 1036]; *Kennedy* v. *Ross*, 28 Cal.2d 569, 575 [170 P.2d 904]; *Ayres* v. *City Council of Los Angeles*, *ante*, pp. 31, 37; [207 P.2d 1]. Thus in respect to municipal affairs the city is not subject to general law except as the charter may provide. (*Heilbron* v. *Sumner*, 186 Cal. 648, 650 [200 P. 409]; *Muehleisen* v. *Forward*, 4 Cal.2d 17, 19 [46 P.2d 969].) As recognized in the West Coast Advertising case, the levy of taxes for city purposes is a municipal affair; the collection, treatment and disposal of city sewage and the making of contracts therefor are likewise municipal affairs (*Loop Lumber Co.* v. *Van Loben Sels*, 173 Cal. 228, 232 [159 P. 600]), and neither may be held to be circumscribed except as expressly limited by the charter provisions. All rules of statutory construction as applied to charter provisions (*Braun, Bryant & Austin* v. *McGuire*, 201 Cal. 134, 143 [255 P. 808]; *Hartford Acc. etc. Co.* v. *City of Tulare*, 30 Cal.2d 832, 835 [186 P.2d 121] are subordinate to this controlling principle. The former guide—that municipalities have only the powers conferred and those necessarily incident thereto (*San Francisco* v. *Boyle*, 195 Cal. 426 [233 P. 965])—is inapplicable. A construction in favor of the exer-

cise of the power and against the existence of any limitation or restriction thereon which is not expressly stated in the charter is clearly indicated. So guided, reason dictates that the full exercise of the power is permitted except as clearly and explicitly curtailed. Thus in construing the city's charter a restriction on the exercise of municipal power may not be implied."

The ordinance before us regulates the furnishing and installation of sewer and water facilities within a chartered city. These are "municipal affairs" within the meaning of section 6, article XI of our state Constitution. (*Loop Lumber Co.* v. *Van Loben Sels*, 173 Cal. 228, 232 [159 P. 600].) An examination of the Tulare city charter discloses the following provisions:

"Powers. Section 3. Said city shall have and may exercise all the powers heretofore granted to the other municipalities of the state, also such as may be necessary or appropriate to a municipal corporation and to the general welfare of its corporation and to the general welfare of its inhabitants which are not prohibited by the constitution, and which it would be competent for this charter to set forth particularly or specifically, and the specification herein of any particular powers shall not be held to be exclusive."

"Section 12. Ordinances may be initiated, or the referendum applied on ordinances passed by the Council under and in accordance with the Constitution and general laws of the state. . . ."

"Section 72. All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter or with ordinances or resolutions hereafter enacted, shall be applicable to the city."

These provisions contain no restrictions on the passage of the ordinance in question, and, in fact, refer to ordinances that may be passed in accordance with the Constitution and general laws of the state.

It is contended by plaintiff that the subject ordinance is contrary to the Subdivision Map Act. (Bus. & Prof. Code, §§ 11500-11628.) We have examined the various provisions of the act and find no limitation therein of the power of the electorate to enact the ordinance involved. The act contains numerous references to "ordinances" which may be enacted, indicating that such ordinances would be

used to supplement the act itself. Section 11526 of the Business and Professions Code provides as follows:

"Provisions governing design, etc., maps and procedure. The design, improvement and survey data of subdivisions and the form and content of tentative record of survey and final maps thereof, and the procedure to be followed in securing official approval are governed by the provisions of this chapter and by the additional provisions of local ordinances dealing with subdivisions, the enactment of which is authorized by this chapter."

In section 11611 the approval of the final subdivision map is made subject in part to any local ordinance applicable. These provisions clearly indicate the legislative intent to authorize the enactment of local ordinances. ■ In respect to municipal affairs, a city is not subject to general law except as the charter may provide. (*City of Grass Valley* v. *Walkinshaw, supra,* p. 599.)

As was said in *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31, 37 [207 P.2d 1]:

"The status of an autonomous city (Const. art. XI, § 6; *West Coast Advertising Co.* v. *San Francisco,* 14 Cal.2d 516 [95 P.2d 138]; *City of Oakland* v. *Williams,* 15 Cal.2d 542 [103 P.2d 168]) is recognized by express references to city ordinances in the Subdivision Map Act. Where as here no specific restriction or limitation on the city's power is contained in the charter, and none forbidding the particular conditions is included either in the Subdivision Map Act or the city ordinances, it is proper to conclude that conditions are lawful which are not inconsistent with the map act and the ordinances and are reasonably required by the subdivision type and use as related to the character of local and neighborhood planning and traffic conditions."

Finally, it is argued by plaintiff that the ordinance is unconstitutional because it deals with administrative or executive matters rather than "legislative," and that initiative and referendum could not be applied to executive and administrative matters.

■ The Subdivision Map Act heretofore referred to, by its provisions, indicates the legislative intention that the action of cities in making requirements such as those questioned here would be "legislative" rather than "administrative or executive." In *McKevitt* v. *City of Sacramento,* 55 Cal.App. 117 [203 P. 132], the court, in considering the distinction

between legislative and administrative or executive power, said, at page 124:

"Acts constituting a declaration of public purpose, and making provision for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence."

It is apparent that the ordinance constitutes a declaration of public purpose and a provision for ways and means of its accomplishment within the quoted definition.

Judgment reversed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied April 12, 1951, and respondent's petition for a hearing by the Supreme Court was denied May 17, 1951.