[Civ. No. 5185. Fifth Dist. Oct. 8. 1982.]

FRANK ONETO, Plaintiff and Appellant, v.
CITY OF FRESNO et al., Defendants and Respondents.

**COUNSEL**

Jeff Reich for Plaintiff and Appellant.

Dawson & ·Ninnis, Wayne N. Witchez, James A. McKelvey, City Attorney, Edwin A. Oeser, Assistant City Attorney, and Dale E. Bacigalupi, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**ANDREEN, J.**—Following the issuance of our opinion in this matter, both parties petitioned for rehearing. We granted same in order to consider issues raised by the parties for the first time, to reconsider our earlier opinion and to have the benefit of the brief and oral argument of new counsel representing respondent City of Fresno.

After further consideration, we affirm the court below. In doing so, we adopt the first part of our original opinion, changing, however, footnote 1. At the appropriate place below, we will note where this opinion differs from the first.

The plaintiff commenced this taxpayer's suit pursuant to Code of Civil Procedure section 526a, seeking to require the City of Fresno (hereinafter City) to repay to the Water Division of the City of Fresno (hereinafter Water Division) $847,828 which was allegedly received by way of unlawful in lieu tax payments made by the Water Division over a period of two years—1975/1976 and 1976/1977. He also seeks a permanent injunction enjoining the City from collection of illegal taxes in the future. The central issue pertains to the proper interpretation of section 1218 of the Fresno City Charter (hereinafter section 1218).

Section 1218, enacted in 1957, provides: "SECTION 1218. MUNICIPALLY OWNED UTILITIES. The Council through the Chief Administrative Officer shall endeavor to make each municipally owned utility financially self-sustaining. After providing for depreciation reserves and amortization of general obligation and revenue bonds issued for such utility and for

reasonable accumulation of reserves for improvement and expansion, and for deposits into special funds created to secure revenue bonds issued for such utility, each utility shall apply all annual profits thereafter remaining to rate reductions, subject to any limitations on the application of such profits or on rate reductions contained in any resolution of the Council relating to the issuance of revenue bonds for such utility. No municipally owned utility shall be operated for the benefit of other municipal functions nor be used directly or indirectly as a general revenue-producing agency for the City, but may pay to the City such amounts of money, in lieu of property and other taxes normally placed upon private business enterprises, as the Council may provide by ordinance and may also pay to the City for any lawful purpose such amounts of surplus annual profits as may be permitted by the provisions of any resolution of the Council relating to the issuance of revenue bonds.''

Pursuant to section 1218, in 1967 the City passed ordinance No. 67-40 adding sections 4-801, 4-802 and 4-803 to article 8, chapter 4 of the Fresno Municipal Code, which insofar as germane here adopted an in lieu tax. The tax rate adopted is the annual weighted average of the total property tax rate levied in all tax areas as established by the county assessor, hereinafter referred to as the county tax rate. Under the ordinances, this tax rate has been and is applied to the value of the fixed assets of the Water Division.

The plaintiff contends that these ordinances are rendered unlawful by section 1218 of the charter in that the taxes authorized by that section may not exceed those that would be collected by the City from a private water company in the City. Those city taxes would be city property taxes, the utility users' tax, business license tax and sales tax, hereinafter referred to as city taxes.[1]

Plaintiff presented evidence in the trial court of four fiscal years, by year, showing the amount of taxes paid by the Water Division based upon the county tax rate and the amount that would have been paid if only city taxes had been paid. Based upon these calculations, the application of the county rate resulted in an alleged excess amount of taxes collected per year as follows:

---

[1]Insofar as we can ascertain from the record, the taxes listed were the taxes in effect during the relevant periods herein.

| Fiscal Year | Difference |
|---|---|
| 1975/76 | $493,662 |
| 1976/77 | 521,428 |
| 1977/78 | 480,353 |
| 1978/79 | 185,618 |
| | Total $1,681,061 |

The trial court held that the in lieu county tax rate was authorized by section 1218 and that there is no limitation on the amount of tax that may be assessed by the City under that section. Plaintiff appealed. (The remainder of this opinion has been revised from the original, although portions of it are incorporated herein.)

The operation of the water department is a municipal affair.[2] (*Mefford* v. *City of Tulare* (1951) 102 Cal.App.2d 919, 924 [228 P.2d 847].) Established law governing municipal affairs of chartered cities is that the city has all powers over its municipal affairs *subject only to the clear and explicit limitations and restrictions contained in the charter.* (*City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 599 [212 P.2d 894].) "All rules of statutory construction as applied to charter provisions [citations] are subordinate to this controlling principle." (*Ibid.*)

A charter is to be broadly construed to permit the exercise of municipal power, and limitations on that power must be expressly stated in the charter, and may not be implied. (*Taylor* v. *Crane* (1979) 24 Cal.3d 442, 450-451 [155 Cal.Rptr. 695, 595 P.2d 129]; *City of Grass Valley* v. *Walkinshaw, supra,* 34 Cal.2d 595, 599.) Full exercise of municipal power is permitted except where it is "clearly and explicitly curtailed." (*City of Grass Valley* v. *Walkinshaw, supra,* 34 Cal.2d at p. 599.)

---

[2]Section 200 of the charter provides: "Section 200. General Powers. The City shall have the power to make and enforce all laws and regulations in respect to municipal affairs, subject only to such restrictions and limitations as may be provided in this Charter and in the Constitution of the State of California. It shall also have the power to exercise any and all rights, powers and privileges heretofore or hereafter established, granted or prescribed by any law of the State, by this Charter, or by any other lawful authority, or which a municipal corporation might or could exercise under the Constitution and laws of the State of California.

"The enumeration in this Charter of any particular power shall not be held to be exclusive of, or any limitation upon, the generality of the foregoing provisions." The effect of this provision is that as to municipal functions, the City's powers over its affairs became all embracing, restricted and limited by the charter only. (*Civic Center Assn.* v. *Railroad Comm.* (1917) 175 Cal. 441, 448, [166 P. 351].)

■ The rules of statutory interpretation are to be applied to the construction of charters. (*Castaneda* v. *Holcomb* (1981) 114 Cal.App.3d 939, 942 [170 Cal.Rptr. 875].) Since there was no extrinsic evidence introduced as to the meaning of the language used, the proper interpretation of that language is a question of law for the court, and we are not constricted in this regard by the conclusions of the trial court. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839.], cert. den. 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708].)

We turn to an examination of the language. The charter provides in part: "No municipally owned utility shall be operated for the benefit of other municipal functions nor be used directly or indirectly as a general revenue-producing agency for the City, *but* may pay to the City such amounts of money, in lieu of property and other taxes normally *placed* upon private business enterprises, as the Council may provide by ordinance and may also pay to the City for any lawful purpose such amounts of surplus annual profits as may be permitted by the provisions of any resolution of the Council relating to the issuance of revenue bonds." (Italics added.)

It is significant that the word "but" precedes the clause defining the extent of the in lieu payment. "But" is defined as: "without, except, outside." (Webster's New Internat. Dict. (3d ed. 1961) p. 303.) The in lieu payment, then, is an exception to the charter mandate that a municipally owned utility may not be used as a general revenue-producing agency.

■ Plaintiff argues that only those taxes assessed by the City may be used as the measure of the in lieu payments and that county property taxes may not be included. The drafters of the city charter easily could have limited the in lieu payments to an amount equal to the imposition of the taxes levied against private business enterprises by the City. After the words in section 1218 granting the City power to collect payments "in lieu of property and other taxes normally placed upon private enterprises" the insertion of the words "by the City" would have limited the City's power as argued by plaintiff. The drafters' failure to place this clear and simple limitation on the City's power is evidence of an intent not to so restrict it.

The language of section 1218 provides that the in lieu payments may be measured by taxes normally *placed* upon private business enterprises. As observed by the trial court below, the reference to an in lieu amount measured by taxes "normally placed on private business enterprises" is a reference to the *tax burden that is avoided* rather than the *tax loss* to the

City by reason of public ownership. This manifests an intent to give water users the benefit of the profits that would have been distributed to the owners if the utility were private, but not more.

This interpretation in no sense gives the City carte blanche to impose any in lieu payment it wishes. Starting in 1967, the in lieu payments to the City were limited to the annual weighted average of the total property tax as established by the county assessor. Now, by state law all property taxes are assessed and collected by the County of Fresno and then disbursed to various governmental entities, including respondent City of Fresno, according to a preset formula prescribed by Proposition 13. Because of Proposition 13, the payments of in lieu taxes have declined in recent years.[3]

We conclude that the charter provision should be read as meaning that a municipal utility, such as the Water Division, shall operate without a profit, but may pay an in lieu amount measured by those property taxes (and other city and county taxes) normally assessed against private business enterprises. That means all property taxes, without limitation. The intent of section 1218—to assure cheap water rates—is met because the Water Division is precluded from making a profit, as would a private business, and is precluded from raising funds for municipal purposes beyond payment to the City of an amount equal to taxes assessed against private enterprise.

**GOMES, J.,**\* ▮▮▮▮▮▮▮▮▮▮ In our original decision in this case, we held that the expressed intent of the last full sentence of section 1218 of the Fresno City Charter is clear, explicit, and unambiguous. Upon rehearing this matter, on petition of both appellant and respondent, I was convinced this was error.

The rule of statutory construction set forth in *Hartford Acc. etc. Co.* v. *City of Tulare* (1947) 30 Cal.2d 832, 835 [186 P.2d 121], provides "[w]here there is a conflict between two provisions in a statute a specific or special provision controls over a general one [citations] . . . ."

To be sure, the intent of the general provision of section 1218 is to insure and maintain low water rates. However, the specific provision, empowering the city council, by ordinance, to set an amount of money

---

[3]Since the passage of Proposition 13 in 1978, the amount of property tax which is collected by the county is essentially frozen (by art. XIIIA, §§ 1-6 of the state Constitution at 1 percent of the *1976* equalized assessment roll valuation), increasing only upon reassessment, at the time of a "change of ownership."

\*Assigned by the Chairperson of the Judicial Council.

to be paid to the City, is by its language ambiguous and susceptible to differing interpretations.

The term "in lieu of" means in substitution of or in place of, and ordinarily implies the preexistence of that it replaces. (See Black's Law Dict. (5th ed. 1979) p. 708, col. 1.)

It is unfortunate the drafters of section 1218, placed the term "in lieu of" into the lengthy, run-on final sentence of the section in such a position that it is not readily clear what is being replaced: Is the amount of money to be paid to the City "in place of" the amount the City would receive from a private enterprise, or the amount a private enterprise would normally pay by way of enumerated taxes?

The trial court found that the placement of the term "in lieu of" was a reference to the limitation of the amount, rather than the manner of payment to the City, and therefore was a reference to the tax *burden* avoided, rather than the tax *loss* to the City.

Applying the holding of *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 599 [212 P.2d 894], that all rules of statutory interpretation are subordinate to the "controlling principle" that limitations on city power must be expressly set forth in the charter, I am persuaded the trial court ruled correctly.

This decision is also consistent with the goal stated in our original opinion; to produce a "reasonable result consistent with [the] legislative purpose." The City should be able to raise amounts of money from the Water Division, sufficient to pay for the services supplied by the City to the Water Division, plus amounts required as reserves for bonds.

It seems clear that the intent of section 1218 encompasses more than the laudable goal of insuring cheap water rates to users by eliminating the profit requirements of a private enterprise through public ownership. While prohibiting the City from funding other services of the goverment through water rate collections, the intent also encompasses the goal of insuring that the utility itself is fully self-supporting and not an increased burden on general City revenue.

I feel the error in logic of our original opinion lies in our silent assumption that in any given fiscal year the City's share of tax rates

normally placed upon private business enterprises is sufficient to pay for services and benefits received by the Water Division from the City.

Attorneys for the City raised as an issue for the first time at rehearing, additional service costs expended by the City for benefit of the Water Division, beyond those provided to City taxpayers and included in City taxes. Because of its inclusion in the City corporation, the Water Division receives direct benefit from other departments and divisions of the City.

A private business enterprise must necessarily provide and fund its own personnel services, legal services, as well as purchasing, maintenance, health and employee benefits and services. In the case of the Water Division, these costs are subsidized in whole or in part by general City revenues.

It seems manifestly fair, on close reexamination, to affirm the trial court's ruling. Fiscal responsibility on the part of government is mandatory, but there seems to be no benefit in providing savings to City water users at the expense of City taxpayers. They are substantially the same citizens.

**BROWN (G. A.), P. J.**—I dissent.

The primal principle of statutory construction requires the ascertainment of the intent of the legislative body that enacted the charter provision. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Where, as here, there is no direct evidence of legislative intent, the court must turn to the words of the statute for the answer. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1], cert. den. 340 U.S. 879 [95 L.Ed. 639, 71 S. Ct. 117].) Of particular significance is the cardinal rule set forth in *City of San Jose* v. *Lynch* (1935) 4 Cal.2d 760, 766 [52 P.2d 919]: "It is axiomatic that *every provision of the charter should be construed in the light of the whole instrument* and of each and every other provision thereof, keeping in view at all times the intent underlying the same. . . . '. . . General and special provisions in a statute should stand together, if possible, but where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part the particular provisions must govern, *unless the statute as a whole clearly shows the contrary intention.* . . .' " (Italics added.)

These cardinal principles have been ignored by the lead opinions. It is plain beyond cavil that the language in section 1218 of the charter, ". . . *each utility shall apply all annual profits thereafter remaining to rate*

*reductions, . . .*" (italics added) was intended to assure cheap water rates to users. This express purpose cannot be gainsaid.

The last full sentence of section 1218 is equally explicit. As part of that sentence it is stated: "*No municipally owned utility shall be operated for the benefit of other municipal functions nor be used directly or indirectly as a general revenue-producing agency for the City, but may pay to the City such amounts of money, in lieu of property and other taxes normally placed upon private business enterprises, as the Council may provide by ordinance . . . .*" (Italics added.) The expressed intent is clear, explicit and unambiguous. Its manifest purpose is to prevent the City from riding on the backs of water users to pay the general expenses of the City by raising revenue from the Water Division in excess of what City services to that agency cost, thus reducing or eliminating the profits which the agency might otherwise make and apply to the reduction of water rates.

It is evident that construing section 1218 as a whole, the dominant purpose and intent is to supply water at cheap rates, and to that end section 1218 prohibits the City from assessing the Water Division for the benefit of other municipal functions or directly or indirectly using the Water Division as a general revenue-producing agency. It is obvious that if the Water Division is assessed at a rate which pays for the services it receives from the City, represented by the City portion of tax rates "normally placed upon private enterprises" (§ 1218 of the charter), ipso facto any amount of money collected by the City over that amount is an amount collected for use to support City services and operations for other purposes, thus using the Water Division as a revenue-producing agency in violation of the specific provisions of section 1218.

Once the legislative intent is ascertained, it is fundamental that the court's task is to effectuate the purpose of the law as expressed in that intent. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645.) The endeavor must be to produce a "reasonable result consistent with [the] legislative purpose . . . ." (E.g., *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 620 [7 Cal.Rptr. 129, 354 P.2d 657].) As the court stated in *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259: "Once a particular legislative intent has been ascertained, it must be given effect ' "even though it may not be consistent with the strict letter of the statute." ' (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 802 [151 P.2d 505, 157 A.L.R. 324].) As we stated nearly a half century ago in *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]: ' "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some

other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' "

Obviously the factors utilized to establish the county tax rate have no necessary relation to the cost of operating the Water Division nor upon the amount of City taxes assessed against private enterprise. Permitting the City to use the arbitrary basis to establish the amount of the in lieu tax in effect places no limitation upon the amount of in lieu charge that may be collected by the City under section 1218. Thus, the interpretation urged by the City and adopted by the lead opinions that the section authorizes the City to use the county tax rate negates and renders meaningless the above referred to express limitations in section 1218 and ignores the cardinal rule that a statute should be construed to give effect to every provision, if possible. (See 58 Cal.Jur.3d, Statutes, § 99, pp. 465-468, § 100, pp. 468-469, § 133, pp. 529-530.)

Accordingly, I would hold that construing section 1218 as a whole and in order to effectuate its clear intent and purpose requires that the express limitations set forth in section 1218 qualify the authority of the City to assess in lieu taxes. The City should be limited in the amounts of money it can raise from the Water Division to that amount which will not produce revenue for the benefit of other municipal functions or revenue in excess of the amounts needed to pay for the services supplied by the City to the Water Division, plus amounts required for reserves for depreciation and amortization of bonds. Thus, the total in lieu tax rate for each fiscal year would be limited to the City portion of tax rates "normally placed upon private business enterprises" (§ 1218 of the charter), including new taxes. Accordingly, the measure of the amount the City may receive from the Water Division for each fiscal year would be the amount received from private business enterprises for the same fiscal year. This, of course, would include the City's portion of taxes collected pursuant to the provisions of Proposition 13. Presumptively, for any fiscal year the City portion of tax rates normally placed upon private business enterprises pays for the services and benefits received from the City. To the extent that sections 4-801, 4-802 and 4-803 of article 8, chapter 4 of the Fresno Municipal Code are in conflict with this standard, they should be held invalid.

The lead opinions rely upon the principle that a city charter may not be interpreted to contain implied limitations on the exercise of power. (*City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 599 [212 P.2d 894].) Referring to the language in section 1218, the City contends that there is no express limitation on the City's power to assess in lieu taxes.

The majority misses the mark as section 1218 does contain the express limitations I have discussed. As mentioned, those limitations are the express limitation pertaining to the application of profits to rate reductions and the limitation contained in the phrase prohibiting the operation of the division for the benefit of other municipal functions and prohibiting the division's use as a general revenue-producing agency for the City. Significantly, these limitations are found in the same sentence as the authority to assess in lieu taxes. Since the limitations are express and not implied, the authorities cited by the majority are inapplicable.

More specifically, the lead opinion relies upon the placement of the word "but" to read out the express limitations in section 1218 and to conclude "[t]he in lieu payment, then, is an exception to the charter mandate that a municipally owned utility may not be used as a general revenue-producing agency." However, this conclusion is clearly contrary to the express limitations contained in the section and renders them meaningless. Moreover, it ignores the time-honored principles of interpretation I have mentioned. The court should ascertain and give effect to the intent of the enactors in interpreting the section as a whole and construing every part of the section to give effect to every provision thereof. Specifically, our Supreme Court has instructed in *Friends of Mammoth* v. *Board of Supervisors, supra*, 8 Cal.3d 247, 259: " ' ". . . The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' " (See also *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].)

Accordingly, I would reverse the judgment.

A petition for a rehearing was denied November 5, 1982, and the opinion was modified to read as printed above. Brown (G. A.), P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied January 6, 1983. Bird, C. J., and Richardson, J., were of the opinion that the petition should be granted.