[No. F044561. Fifth Dist. Mar. 23, 2005.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and
Respondents, v.
CITY OF FRESNO, Defendant and Appellant.

COUNSEL

Hilda Cantu Montoy, City Counsel, James C. Sanchez, Deputy City Counsel; Colantuono, Levin & Rozell, Michael G. Colantuono and Sandra J. Levin for Defendant and Appellant.

Best Best & Krieger, Sonia R. Carvalho, Sandra M. Schwarzmann and Marc S. Ehrlich for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Plaintiffs and Respondents.

## OPINION

**VARTABEDIAN, J.**—This is an appeal from judgment for plaintiffs and respondents Howard Jarvis Taxpayers Association and others (collectively plaintiffs), entered on the parties' cross-motions for summary judgment. Appellant City of Fresno (Fresno) contends on appeal that its assessment of a fee in lieu of property taxes upon its own utility departments is unaffected by Proposition 218, the Right to Vote on Taxes Act, approved by the voters in 1996. Plaintiffs contend the fee is prohibited by Proposition 218, as the trial court ruled. We conclude the fee, in its present form, violates the constitutional provisions adopted through Proposition 218. We affirm the judgment.[1]

## FACTS AND PROCEDURAL HISTORY

### A. *The Fee in Lieu of Property Taxes*

Fresno is a charter city. In 1957, the voters approved a charter provision governing municipally owned utilities. Section 1218 of the city charter, as adopted in 1957 and currently, requires that the city "endeavor to make each municipally owned utility financially self-sustaining." It also provides that, after payment of enumerated expenses and funding of enumerated reserves, "each utility shall apply all annual profits thereafter remaining to rate reductions . . . . No municipally owned utility shall be operated for the benefit of other municipal functions nor be used directly or indirectly as a general revenue-producing agency for the City, but may pay to the City such amounts of money, in lieu of property and other taxes normally placed upon private business enterprises, as the [City] Council may provide by ordinance . . . ." (Most government-owned property is exempt from property taxation; see Cal. Const., art. XIII, § 3.) (All further citations to "article" are to the California Constitution.)

Beginning with a 1967 ordinance, Fresno required each municipal utility to "pay to the City, in lieu of property and other taxes normally placed upon private business," an amount designated by the council in a master fee resolution. (Fresno Mun. Code, § 4-803.) The fee currently is 1 percent of the assessed value of fixed assets of the utility department or division. We will refer to this charge by the city as the "in lieu fee."

---

[1] We previously ordered judicial notice of particular provisions of the Fresno Municipal Code, as requested by appellant and amicus curiae. We also take judicial notice of the November 1996 ballot pamphlet for Proposition 218 and the Fresno City Charter.

"Municipal utility" is defined in Fresno Municipal Code section 4-802 to include not only the department of public utilities' water, sewer, and solid waste divisions, but also airports, golf courses, and certain other city departments. For 2002, the last year reflected in our record, Fresno expected to generate about $8.6 million for its general fund from in lieu fees paid by the municipal utilities. The record does not disclose the portion of this revenue generated by the three utility divisions directly involved in the present case, water, sewer, and solid waste disposal.

The amount paid by each utility is passed through to its customers. The overall amount of the in lieu fee is "blended" into the user fees (in a manner not disclosed by the record), so that, for example, a water bill contains only a single amount due for service; the pass-through of the in lieu fee is not separately reflected on the bill. According to the budget of Fresno for the fiscal year 2003–2004, of which we take judicial notice, in lieu fees vary as a percentage of the utility divisions' operating budgets, ranging up to 9 percent of the water division's budget and 11 percent of the wastewater division's budget. (See Fresno, 2003–2004 Budget, 443, 446 [hereafter Fresno Budget] [available at <http://www.fresno.gov/budget/budget.asp> (as of Mar. 23, 2005)].)

B. *Proposition 218*

■ Approved by the voters on November 5, 1996, Proposition 218 added articles XIII C and XIII D to the California Constitution. Article XIII D, entitled "Assessment and Property Related Fee Reform," addresses "all assessments, fees and charges, whether imposed pursuant to state statute or local government charter authority," with certain enumerated exceptions. (Art. XIII D, § 1.)

In relevant part, Proposition 218 uses the words "fees" and "charges" interchangeably and, usually, in combination, as "fee or charge." (See, e.g., art. XIII D, § 6.) For convenience, we shall refer to these simply as "fees."

A fee, for purposes of article XIII D, is "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." (Art. XIII D, § 2, subd. (e).) Property ownership is defined broadly to include "tenancies of real property where tenants are directly liable to pay" the fee in question. (Art. XIII D, § 2, subd. (g).) A public service is "property related" if it has "a direct relationship to property ownership." (Art. XIII D, § 2, subd. (h).)

## C. *The Complaint*

Plaintiffs filed a complaint for declaratory relief and writ of mandate on January 8, 2003. The complaint focuses on Fresno's water, sewer, and solid waste collection services. It alleges that, in addition "to the revenue collected through service rates for the recovery of costs incurred by the City in providing such services, the City also collects an additional amount it calls a fee in lieu of property tax." The complaint avers the in lieu fee "is preempted by state constitutional provisions and statutes which exempt public property from property taxation, and violates state constitutional provisions and statutes which prohibit fees from exceeding the cost of providing service and prohibit the expenditure of fee revenue for purposes other than providing service." In its answer to the complaint, as relevant here, Fresno contends "the revenue measure at issue is valid in all respects."

## D. *The Summary Judgment Motions*

Plaintiffs moved for summary judgment based, primarily, on *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637 [119 Cal.Rptr.2d 91] (hereafter *Jarvis v. Roseville*), which involved similar in lieu fees assessed against a city's utility departments. Plaintiffs' motion did not distinguish between the in lieu fee itself, imposed by Fresno on its utility departments, and the effect of the fee on ratepayers as the fee is recovered (along with all the rest of a department's budgeted costs) as part of monthly utility bills. Plaintiffs asserted three reasons why "the fee" violated article XIII D, section 6.[2]

---

[2] Article XIII D, section 6 provides:

"Property Related Fees and Charges. (a) Procedures for New or Increased Fees and Charges. An agency shall follow the procedures pursuant to this section in imposing or increasing any fee or charge as defined pursuant to this article, including, but not limited to, the following:

"(1) The parcels upon which a fee or charge is proposed for imposition shall be identified. The amount of the fee or charge proposed to be imposed upon each parcel shall be calculated. The agency shall provide written notice by mail of the proposed fee or charge to the record owner of each identified parcel upon which the fee or charge is proposed for imposition, the amount of the fee or charge proposed to be imposed upon each, the basis upon which the amount of the proposed fee or charge was calculated, the reason for the fee or charge, together with the date, time, and location of a public hearing on the proposed fee or charge.

"(2) The agency shall conduct a public hearing upon the proposed fee or charge not less than 45 days after mailing the notice of the proposed fee or charge to the record owners of each identified parcel upon which the fee or charge is proposed for imposition. At the public hearing, the agency shall consider all protests against the proposed fee or charge. If written protests against the proposed fee or charge are presented by a majority of owners of the identified parcels, the agency shall not impose the fee or charge.

"(b) Requirements for Existing, New or Increased Fees and Charges. A fee or charge shall not be extended, imposed, or increased by any agency unless it meets all of the following requirements:

First, the fee was not "required to provide the property related service" and therefore exceeded the cost to provide such services. (See art. XIII D, § 6, subd. (b)(1).) While payment of the in lieu fee to the general fund was, in a sense, "required" by city ordinance, payment of the fee was not a required cost of providing utility services.

Second, "revenues" derived from "the fee" were used "for a[] purpose other than that for which the fee or charge was imposed." (Art. XIII D, § 6, subd. (b)(2).) Plaintiffs' rationale was stated in the following terms: "Utility rates are imposed for the use of utility services. The City is taking an amount of that revenue and using it for purposes 'other than that for which the fee or charge was imposed.' "

Third, "the fee" is deposited in the general fund and, therefore, violates the requirement that no fee "may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners." (Art. XIII D, § 6, subd. (b)(5).)

Fresno also moved for summary judgment. It contended Proposition 218 was inapplicable to fees that were not newly imposed, increased, or formally

"(1) Revenues derived from the fee or charge shall not exceed the funds required to provide the property related service.

"(2) Revenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed.

"(3) The amount of a fee or charge imposed upon any parcel or person as an incident of property ownership shall not exceed the proportional cost of the service attributable to the parcel.

"(4) No fee or charge may be imposed for a service unless that service is actually used by, or immediately available to, the owner of the property in question. Fees or charges based on potential or future use of a service are not permitted. Standby charges, whether characterized as charges or assessments, shall be classified as assessments and shall not be imposed without compliance with Section 4.

"(5) No fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners. Reliance by an agency on any parcel map, including, but not limited to, an assessor's parcel map, may be considered a significant factor in determining whether a fee or charge is imposed as an incident of property ownership for purposes of this article. In any legal action contesting the validity of a fee or charge, the burden shall be on the agency to demonstrate compliance with this article.

"(c) Voter Approval for New or Increased Fees and Charges. Except for fees or charges for sewer, water, and refuse collection services, no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area. The election shall be conducted not less than 45 days after the public hearing. An agency may adopt procedures similar to those for increases in assessments in the conduct of elections under this subdivision.

"(d) Beginning July 1, 1997, all fees or charges shall comply with this section." (Titles of section are contained in the original text of Prop. 218. [See Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 218, pp. 108–109.])

extended after the effective date of Proposition 218. Fresno asserted the in lieu fee is not imposed as an "incident of property ownership." (See art. XIII D, § 2, subd. (e).) Finally, Fresno argued the in lieu fee, as it impacted ratepayers, is not a fee at all but, instead, is a general tax on the consumption of utility services. As a general tax adopted by the electorate, it meets the requirements of Proposition 218, according to Fresno. (See art. XIII C, § 2.)

In an extensive and well-reasoned order, the trial court granted plaintiffs' motion for summary judgment and denied that of Fresno. Quoting at length from *Jarvis v. Roseville, supra,* 97 Cal.App.4th 637, which it found controlling, the trial court concluded the in lieu fee was imposed as an incident of property ownership, that Proposition 218 covered existing fees as well as new or increased fees, and that the in lieu fee was not a general tax.

After concluding the in lieu fee was subject to the requirements of Proposition 218, the court emphasized that article XIII D, section 6, subdivision (b)(5) places the burden on the governmental entity to "demonstrate compliance with this article" in any legal action contesting the validity of a fee. The court noted that Fresno had not offered any evidence or argument to show that it had complied with article XIII D; instead, Fresno exclusively argued that Proposition 218 (or at least the portion contained in article XIII D, section 6) was inapplicable. The court concluded the in lieu fee, exacted from ratepayers but used as general revenue, violated article XIII D in all three of the ways suggested by plaintiffs.

The court entered judgment declaring invalid Fresno Municipal Code section 4-803 insofar as it authorized the in lieu fee for water, sewer, and solid waste utilities. It enjoined Fresno from collecting such a fee.

Fresno filed a timely notice of appeal.

## DISCUSSION

### A. *Historical Background and Initial Conclusions*

Governmental entities are permitted to charge user fees to recover the cost of utility services. (See Pub. Util. Code, § 12809.) When a city decides to establish its utility departments as enterprise funds, as an accounting matter certain costs of the enterprise are attributed to it; user fees seek to recover these costs. (See Fresno Budget, *supra,* p. 652 [defining "Enterprise Funds"].)

Typically, however, some infrastructure costs have not been attributed to the enterprise; for example, there is an added cost of repair required by the transit of garbage trucks over streets and highways. (See *Jarvis v. Roseville,*

*supra,* 97 Cal.App.4th at p. 648.) Such costs are real, even if minimal and difficult to calculate precisely. Further, they are the type of expense normally paid out of a city's general revenue and funded through ad valorem property taxes and sales taxes. (See *Oneto v. City of Fresno* (1982) 136 Cal.App.3d 460, 467 [186 Cal.Rptr. 299] (conc. opn. of Gomes, J.).)

Fresno's charter, unlike that of Los Angeles, for example, prohibited it from making a profit on utility services. (Compare *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 85 Cal.App.4th 79, 81–82 [101 Cal.Rptr.2d 905] (hereafter *Jarvis v. Los Angeles*) with Fresno Charter, § 1218.) Nevertheless, Fresno had—and undoubtedly has—costs generated by the utility departments, but not attributed to them directly in their enterprise-fund-based budgets. Those costs must be covered in some manner, if not from "profits" from the enterprise then from some other source of revenue. (See generally *Oneto v. City of Fresno, supra,* 136 Cal.App.3d at p. 467 (conc. opn. of Gomes, J.).)

The present in lieu fee was, apparently, a simple way for Fresno to account for those city costs that were not expressly identified in the budget of the utility enterprise funds. (See *Oneto v. City of Fresno, supra,* 136 Cal.App.3d at p. 468 (conc. opn. of Gomes, J.).) As a very rough approximation, Fresno could have determined its unallocated cost for providing utility services was equivalent to the taxes paid by private business; the in lieu fee could be established at the tax rate assessed such private enterprises. (See *ibid.* and *id.* at p. 470 (dis. opn. of Brown, P. J.).)

Before Proposition 218, a city did not need to be too precise in accounting for all of the costs of a utility enterprise, since the city was permitted (unless otherwise restricted by its charter) to make a profit on its utility operations in any event and rates were permitted to reflect the "value" of the service, not just the cost of providing the service. (See *Jarvis v. Los Angeles, supra,* 85 Cal.App.4th at pp. 81–82; *Oneto v. City of Fresno, supra,* 136 Cal.App.3d at p. 464.)

■ Proposition 218 changed all that with its constitutional requirement that "[r]evenues derived from the fee or charge shall not exceed the funds required to provide the property related service." (See art. XIII D, § 6, subd. (b)(1); see also *Jarvis v. Roseville, supra,* 97 Cal.App.4th at p. 649.)

Cities are still entitled to recover all of their costs for utility services through user fees. (*Jarvis v. Roseville, supra,* 97 Cal.App.4th at p. 648.) The manner in which they may do so, however, is restricted by another portion of Proposition 218: "The amount of a fee or charge imposed . . . shall

not exceed the proportional cost of the service attributable to the parcel." (Art. XIII D, § 6, subd. (b)(3).)

■ Together, subdivision (b)(1) and (3) of article XIII D, section 6, makes it necessary—if Fresno wishes to recover all of its utilities costs from user fees—that it reasonably determine (*Jarvis v. Roseville, supra,* 97 Cal.App.4th at p. 648) the unbudgeted costs of utilities enterprises and that those costs be recovered through rates proportional to the cost of providing service to each parcel. Undoubtedly this is a more complex process than the assessment of the in lieu fee and the blending of that fee into the rate structure. Nevertheless, such a process is now required by the California Constitution. The trial court correctly prohibited Fresno from collecting the outdated in lieu fee.

Fresno does not accept that Proposition 218 requires it to change the way it accounts for the cost of city services provided to its enterprise-fund departments. Instead, it contends utility user fees incorporating an in lieu fee component are not the type of fee addressed by Proposition 218 and that, in any event, Proposition 218 does not purport to restrict existing fees. In addition, Fresno contends the in lieu fee component of utility user fees is really a general tax on consumption of utilities, not a Proposition 218 fee at all. None of these contentions has merit.

B. *"Existing Fees"*

The limitation that revenue derived from a fee shall be used only for the purpose for which the fee was charged is contained in article XIII D, section 6, subdivision (b). That section is entitled: "Requirements for *Existing*, New or Increased Fees and Charges." (Italics added.) The substantive portion of subdivision (b) does not use parallel language, however. It states that its limitations are upon a fee *"extended,* imposed, or increased by any agency." (Italics added.) Section 6, subdivision (d) provides "all fees" shall "comply with this section" beginning July 1, 1997.

Proposition 218 does not define "extended." Government Code section 53750, subdivision (e), adopted by the Legislature in the wake of voter approval of Proposition 218, provides in part that, for the purposes of article XIII D, " 'Extended,' when applied to an existing tax or fee or charge, means a decision by an agency to extend the stated effective period for the tax or fee or charge, including, but not limited to, amendment or removal of a sunset provision or expiration date." Thus, Fresno contends, for Proposition 218 to

apply to an existing fee, a governmental agency must take formal action to extend the fee. Fresno contends its in lieu fee has not been "extended" and therefore it is not a "fee" for purposes of article XIII D, section 6. As a result, it is not one of the fees comprising "all fees" that are required to "comply with this section."

Plaintiffs contend that article XIII D, section 6, subdivision (d) means what it says: "Beginning July 1, 1997, all fees or charges shall comply with this section." Secondarily, they note that section 6, subdivision (b) expressly applies to "existing fees," and Fresno's proposed interpretation of section 6 would simply read that applicability out of Proposition 218.

■ We agree with plaintiffs' first contention. Article XIII D, section 6, subdivision (b) requires that a city or agency that acts to extend, impose, or increase a fee after the effective date of Proposition 218 must comply with the requirements of subdivision (b)(1) through (5). However, section 6, subdivision (d) clearly requires, in addition, that cities and other agencies conform existing fees to the requirements of subdivision (b)(1) through (5) by the stated date of July 1, 1997.

This view of the unambiguous language of article XIII D, section 6, subdivision (d) is supported by the Legislative Analyst's summary of Proposition 218 printed in the ballot pamphlet for the November 1996 general election. (See *Legislature v. Eu* (1991) 54 Cal.3d 492, 504–505 [286 Cal.Rptr. 283, 816 P.2d 1309].) "Specifically, the measure states that *all* local property-related fees must comply by July 1, 1997, with the following restrictions: . . . ." (The pamphlet then summarizes the provisions of section 6, subdivision (b)(1) through (5).) (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) analysis of Prop. 218 by Legislative Analyst, p. 73.) "By July 1, 1997, local governments would be required to reduce or repeal existing property-related fees and assessments that do not meet the measure's restrictions on (1) fee and assessment amounts or (2) the use of these revenues." (*Id.*, p. 74.)

Similarly, when the Legislature considered Senate Bill No. 919 (1997–1998 Reg. Sess.), proposing the definitions now codified in Government Code section 53750, the various committee reports on the bill all recognized that Proposition 218 applied to existing fees and assessments. For example, the Assembly Committee on Local Government report on the bill stated: "Proposition 218 requires that all existing, new, or increased assessments shall be in compliance with the provisions of the proposition by July 1, 1997." (Assem. Com. on Local Government, Analysis of Sen. Bill No. 919

(1997–1998 Reg. Sess.) June 24, 1997, p. 3; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 919 (1997–1998 Reg. Sess.) Apr. 17, 1997, p. 3.)

■ Where the language of the proposition is clear and there is no suggestion of any conflicting voter intention, we have no authority to engraft an exception for existing fees onto the constitutional provisions adopted in Proposition 218.

## C. *Fee as an "Incident of Property Ownership"*

Fresno contends fees are subject to the restrictions of Proposition 218 "only if the fee is imposed *solely* because a person owns property and not because of the particular use to which the property is put." (Italics and boldface in original.) Fresno contends the in lieu fee is "not imposed solely on the basis of property ownership. Rather, it is imposed on the use of utility services." Fresno bases its contentions on its analysis of *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409 [9 Cal.Rptr.3d 121, 83 P.3d 518] (*Richmond*).

■ Fresno's analysis of *Richmond* could hardly be more misguided. *Richmond* expressly states: "A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property." (*Richmond, supra,* 32 Cal.4th at p. 427.) Fresno proposes that we reject the court's discussion as dicta. Even if the court's conclusions technically constitute dicta, we will not reject dicta of the Supreme Court without a compelling reason, not present here. (See *California Coastal Com. v. Office of Admin. Law* (1989) 210 Cal.App.3d 758, 763 [258 Cal.Rptr. 560].)

In reaching its conclusion that utility rates are subject to Proposition 218, the *Richmond* opinion cites with approval *Jarvis v. Roseville, supra,* 97 Cal.App.4th at page 645. *Jarvis v. Roseville* held that an in lieu fee imposed upon city water, sewer, and garbage service was an "incident of property ownership" fee subject to the restrictions of article XIII D, section 6, subdivision (b). That case convincingly distinguishes the sole case Fresno relies upon for the proposition that Fresno's in lieu fee is not an incident of property ownership. (See *Jarvis v. Roseville, supra,* at pp. 646–647, distinguishing *Jarvis v. Los Angeles, supra,* 85 Cal.App.4th 79.)[3] (We also note

---

[3] Fresno also relies on a case not final at the time its brief was filed and subsequently granted review. (See *Bighorn-Desert View Water Agency v. Beringson* (review granted Oct. 27, 2004, S127535).)

In a broader sense of arguing the in lieu fee is not an "incident of ownership" fee, Fresno cites to *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th

*Jarvis v. Los Angeles* did not involve an in lieu fee at all. Instead, plaintiffs contended overall water rates were unreasonably high and constituted a special tax that could be adopted only by vote of the taxpayers. (See 85 Cal.App.4th at p. 83.).)

In *Jarvis v. Roseville, supra,* 97 Cal.App.4th 637, the in lieu fee charged by the city was 4 percent of the utility department's annual budget. In the present case, not only is the fee passed through to ratepayers as part of the bill for utility services, but also the in lieu fee is expressly imposed upon the ownership of property *by the utility* itself: "During each fiscal year each municipal utility shall pay to the City, *in lieu of property . . . taxes* normally placed upon private business . . . ." (Fresno Mun. Code, § 4-803, italics added.) Thus, in this case even more clearly than in *Jarvis v. Roseville,* the fee is imposed by the city on "a parcel" or as "an incident of property ownership": the in lieu fee is imposed directly upon ownership of property by the utility department based solely on its ownership of the property.

We conclude the in lieu fee imposed by Fresno on its utility departments and divisions, and passed through to ratepayers, is a fee subject to the restrictions of article XIII D, section 6. As such, revenues derived from the fee "shall not exceed the funds required to provide the property related service." (Art. XIII D, § 6, subdivision (b)(1).)

D. *Pass-through of the Fee as a Utilities Consumption Tax*

In its reply brief, Fresno reprises an argument rejected by the trial court, namely that the in lieu fee is actually a tax on the consumption of utility services. This is a rather peculiar argument, since section 1224 of the Fresno Charter provides: "The city shall not tax any person for using any utility service . . . ."

---

830 [102 Cal.Rptr.2d 719, 14 P.3d 930] (*Apartment Assn.*). *Apartment Assn.* involved a challenge to a fee charged to each unit of multifamily rental housing; the fee funded periodic inspections of such properties to prevent deterioration of the housing stock. (*Id.* at p. 835.) The Supreme Court held that the fee was not subject to article XIII D. (*Apartment Assn., supra,* at p. 840.) The court determined the fee was "more in the nature of a fee for a business license than a charge against property." (*Ibid.*) In doing so, Justice Mosk used certain broad language upon which Fresno has focused: "The inspection fee is not imposed solely because a person owns property." (*Id.* at p. 838.) Fresno points out that the in lieu fee is not imposed on water users solely because they own property but, instead, because they use water, whether they own property or not. Of course, Fresno's primary example of imposition of the fee upon nonowners involves renters; but article XIII D broadly defines ownership to include rental interests. (Art. XIII D, § 2, subd. (g).) Further, the context in which Justice Mosk used the broad language upon which Fresno relies was entirely different from the present context; particularly in light of *Richmond, supra,* 32 Cal.4th 409, discussed above, we cannot conclude the *Apartment Assn.* court intended to exempt from article XIII D precisely the type of fees to which Proposition 218 was directed. (See also *Apartment Assn., supra,* at p. 839.)

In addition, Fresno fails to demonstrate that the fee constitutes a tax *on utilities consumers* in any meaningful sense of the word "tax." While it asserts that "[t]he levy is imposed on the utilities' ratepayers," that conclusion is not supported by the record. Not only is the "levy" directly upon the utility departments and divisions ("During each fiscal year each municipal utility shall pay to the City . . ." (Fresno Mun. Code, § 4-803)), but, in addition, the utility departments are not required to recover the in lieu fee from ratepayers in any particular manner, as far as the record shows. Instead, the utility simply has to come up with the in lieu fee in some manner and pay it to the general fund. (Nothing in our record would prohibit, for example, recovery of the water division's entire in lieu fee from commercial water users through the rate for their metered water service, instead of exacting a portion of the fee from residential users whose water charges are not based on consumption.) An exaction imposed on any particular ratepayer in an amount established in the discretion of the utility department is not an exercise of the city's taxing power.

This court referred to the in lieu fee as an "in lieu tax" in *Oneto v. City of Fresno, supra,* 136 Cal.App.3d at page 463. In that case, however, we were considering the effect of the levy upon the utility department, not on ratepayers. In fact, the·relief sought by the plaintiff in that case was repayment from Fresno to the water division of $847,828 in "unlawful in lieu tax payments made by the Water Division." (*Id.* at p. 462.)

We conclude the in lieu fee is not a tax upon consumers of utilities. It is, instead, a fee placed upon the utility departments and divisions. As such, it is simply a cost of doing business that the utilities are entitled to recover, if it is a permissible cost of doing business in the first instance. (See art. XIII D, § 6, subd. (b)(1).) To that issue we now return.

E.   *The In Lieu Fee as a Cost of Providing Services*

As apparently was the case two decades ago (see *Oneto v. City of Fresno, supra,* 136 Cal.App.3d at p. 470 (dis. opn. of Brown, P. J.)), Fresno has not made any attempt to establish the actual cost of services provided to the utilities but not set forth in the enterprise fund budget for the utility. According to the official Fresno Web site, user fees in some departments—but not the utility departments—have recently been reviewed and adjusted to assure that the fee, in most cases, covers the entire cost of the service. (See <http://www.fresno.gov/budget/MasterFee/default.asp> [as of Mar. 23, 2005].)

Nothing in this opinion in any way precludes Fresno from undertaking such a review of utility department costs, and nothing in article XII of the Fresno Charter appears to prohibit collection of an in lieu fee to recover such

costs. (See *Oneto v. City of Fresno, supra,* 136 Cal.App.3d at p. 466.) On the current record, however, Fresno has not even *claimed* the in lieu fee approximates the cost of city services to the utility departments and divisions, much less has it established such a relationship as a fact. (See art. XIII D, § 6, subd. (b)(5) [allocating to governmental agency burden to demonstrate compliance with art. XIII D].) Accordingly, the trial court correctly issued an injunction to prohibit Fresno from collecting the current 1 percent in lieu fee from the water, wastewater, and solid waste divisions of the department of public utilities.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Dibiaso, Acting P. J., and Dawson, J., concurred.

A petition for a rehearing was denied April 19, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 15, 2005.