Filed 12/1/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIANA LEJINS et al., | B305134, B306506 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 18STCP02628) |
| v. | |
| CITY OF LONG BEACH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Charles Parkin, City Attorney, Howard D. Russell, Principal Deputy City Attorney, Richard Anthony, Deputy City Attorney; Jarvis, Fay & Gibson, Benjamin P. Fay, and Gabriel McWhirter for Defendant and Appellant.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, and Matthew C. Slentz, for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

Benink & Slavens, Eric J. Benink, and Vincent D. Slavens for Plaintiffs and Respondents.

_____

Diana Lejins and Angela Kimball (collectively, Plaintiffs) filed a petition for writ of mandate in the trial court, challenging a surcharge defendant City of Long Beach (the City) imposes on its water and sewer customers by embedding the surcharge in the rates the Long Beach Water Department (the Water Department) charges its customers for service. The surcharge covers transfers of funds from the Water Department to the City's general fund, to be used for unrestricted general revenue purposes. The City contends the surcharge was legally imposed because it was approved by a majority of the City's voters pursuant to article XIII C of the California Constitution.[1] Plaintiffs argue notwithstanding majority voter approval, the surcharge violates article XIII D, which prohibits a local agency from assessing a fee or charge "upon any parcel of property or upon any person as an incident of property ownership" unless the fee or charge satisfies enumerated requirements the City acknowledges were not met here. (Art. XIII D, §§ 3, subd. (a) & 6, subd. (b).) The trial court entered judgment in favor of Plaintiffs, concluding the surcharge is unconstitutional and invalid under article XIII D for the reason Plaintiffs advance. As explained below, we agree with Plaintiffs' argument and affirm the judgment and post-judgment order awarding attorney fees to Plaintiffs.[2]

---

[1] Undesignated article references are to the California Constitution.

[2] Plaintiffs also argue, and the trial court also concluded, the surcharge is unconstitutional and invalid under article XI, section 7 to the extent the City collects the surcharge from water and sewer utility customers who receive service at a location outside the City. We need not reach this issue based on our

**BACKGROUND**

**I.     Proposition 218 – A Brief Overview**

In 1996, California voters adopted Proposition 218, the "Right to Vote on Taxes Act," which added articles XIII C and XIII D—the California Constitution provisions the parties reference in this action.  As our Supreme Court has explained: " 'Proposition 218 can best be understood against its historical background, which begins in 1978 with the adoption of Proposition 13,' " which added article XIII A.  (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836 (*Apartment Assn.*).)  Among other things, Proposition 213 " 'limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited increases in the assessed valuation to 2 percent per year unless and until the property changed hands;' " it also prohibited local governments " 'from enacting any special tax without a two-thirds vote of the electorate.' "  (*Ibid.*; art. XIII A, §§ 1, 2 & 4.)

Article XIII D, added in 1996 by Proposition 218, " 'allows only four types of local property taxes:  (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge' " for a property-related service.  (*Apartment Assn.*, *supra*, 24 Cal.4th at p. 837; art. XIII D, § 3, subd. (a), ¶¶ (1)-(4).)  Proposition 218 " 'buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges.' "  (*Ibid*.)  The parties here agree the Measure M surcharge does not constitute an ad valorem property tax, a special tax, or an assessment; as discussed below, they disagree whether it constitutes a fee or

holding the surcharge is unconstitutional and invalid as to all customers under article XIII D.

charge "assessed by any agency upon any parcel of property or upon any person as an incident of property ownership," subject to article XIII D's restrictions. (Art. XIII D, § 3.) A "property-related fee [or charge] violates article XIII D if [among other things] the revenues derived from the fee [or charge] exceed the amount required to provide the property-related service [(art. XIII D, § 6, subd. (b), ¶ (1))]"; "if revenues derived from the fee [or charge] are used for any purpose other than that for which it was imposed (see art. XIII D, § 6, subd. (b)(2)) or if the fee [or charge] is imposed for general governmental services (see art. XIII D, § 6, subd. (b)(5))." (*Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 14 (*Redding*).)

Article XIII C, added in 1996 by Proposition 218, "restricts the authority of local governments to impose taxes by, among other things, requiring voter approval of all taxes imposed by local governments." (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1200.) As defined in article XIII C, a general tax is "any tax imposed for general governmental purposes," and a special tax is "any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund." (Art. XIII C, § 1, subds. (a) & (d).) "Article XIII C buttresses article XIII D by limiting the other methods by which local governments can exact revenue using fees and taxes not based on real property value or ownership." (*Redding, supra,* 6 Cal.5th at p. 10.)

"As a constitutional initiative, Proposition 218 is binding upon charter cities," such as the City here. (*Howard Jarvis Taxpayers Assn. v. City of San Diego* (2004) 120 Cal.App.4th 374, 391, italics omitted.)

4

## II.    The City and Its Water Department

The City is governed by the Long Beach City Charter (Charter), which created its Water Department at article XIV, section 1400 et seq. of the Charter.  The City's Water Department, which is not a legal entity separate from the City, provides water and sewer services to most of the City's residents and businesses and to a small number of customers located in nearby cities or unincorporated areas of Los Angeles County.  At all relevant times, plaintiff Diana Lejins has resided in the City and is a water and sewer customer of the Water Department; and plaintiff Angela Kimball has resided in an unincorporated area of Los Angeles County and is a water customer of the Water Department.

The Water Department is managed by a five-member Board of Water Commissioners (the Board).  (Charter, art. XIV, § 1400.)  One of the Board's powers, as provided in the Charter, is to fix rates charged for water and sewer services.  The rates ultimately must be approved by the City Council.  (*Id*. at § 1403(5)-(6).)  Monies collected from customers for water service are accounted for and initially maintained in the City's Water Revenue Fund, and monies collected from customers for sewer service are accounted for and initially maintained in the City's Sewer Revenue Fund.  (*Id*. at §§ 1403(13) & 1407.)

As described in the record on appeal, there is a long history in the City of transferring revenues from the City's utilities to the City's general fund to help support general City services, such as police, fire, library, and parks.

## III.   Prior Litigation and Settlement

The City devised the surcharge at issue in this case to account for a reduction of general fund revenue that resulted

after Diana Lejins (one of the plaintiffs in this case) sued the City in 2016 (in a different case), challenging a pipeline permit fee the City required the Water Department to pay to the City's general fund to install and operate pipelines and other facilities in the City's streets and rights-of-way.  The City established the pipeline permit fee by ordinance, without approval by the City's voters.  The Water Department's pipeline permit fee payments that were placed in the City's general fund were treated as unrestricted revenue.  The Water Department, with City Council approval, fixed its water and sewer rates at a level to recoup the amount of the pipeline permit fees from its customers.

On November 8, 2017, the City and Lejins settled the pipeline permit fee lawsuit.  The City agreed to stop collecting pipeline permit fees from the Water Department.  The settlement also allowed the Water Department to make payments to the City's general fund to cover street repair and public safety costs associated with the Water Department's activities.  The City commissioned studies of such costs during the pipeline permit fee litigation and determined payments to the general fund to cover such costs would be less than the amount the pipeline permit fee had generated for the general fund.  The City reduced water and sewer rates accordingly, and agreed to transfer $12 million from the City's general fund to the Water Department over approximately four years.  On December 5, 2017, the City Council adopted an ordinance reducing water and sewer rates in accordance with the settlement.

IV.    **Measure M and the Surcharge Embedded in the Rates the Water Department Charges Its Customers**

In early 2018, the City Council held public meetings to consider amending its Charter to address the loss of general fund

6

revenue resulting from the settlement of the pipeline permit fee lawsuit—the amount which exceeded the Water Department's payments to the City's general fund to cover street repair and public safety costs associated with the Water Department's activities. During a January 10, 2018 meeting of the City's Charter Amendment Committee and the City Council there was discussion regarding the long history in the City of transferring revenues from the City's utilities to the City's general fund to help support general City services, such as police, fire, library, and parks.

The City devised Measure M, which would amend article XIV, section 1407 of the Charter to authorize the Water Department to transfer to the City's general fund any funds from the Water Revenue Fund and/or the Sewer Revenue Fund that the Board determined "to be unnecessary to meet" other obligations of the Water Department, not to exceed 12 percent of the "annual gross revenues of the water works and sewer system, respectively." (Charter, art. XIV, § 1407(5).) Measure M would permit the City to use the proceeds from these transfers for "unrestricted general revenue purposes," as the City Council may direct "by budget adoption or other appropriation." (*Id*. at § 1407(6)-(7).) Measure M would also authorize, but not require, the Board to fix, and the City Council to approve, "water and sewer rates in an amount sufficient to recover the cost" of any transfers to the general fund that the Board may make. (*Id*. at § 1407(8).) As set forth in the City's opening brief on appeal, the purpose of the Measure M revenue transfers was "to provide financial support for general city services."

On March 7, 2018, the City Council adopted a resolution calling for the submission of the proposed Charter amendment to

7

City voters at the next general election.  The Official Sample Ballot for the general election at which Measure M was approved asked voters the following:  "To maintain general City services like 9-1-1 emergency response, police/fire protection, street/pothole repairs, senior services, parks and libraries, shall the City of Long Beach amend its Charter to authorize annual fund transfers from the City's water, sewer and gas utilities to the General Fund not to exceed 12% of utility gross revenues, generating approximately $25,500,000 annually for unrestricted general revenue purposes, requiring annual independent audits, until ended by voters?"  An "Impartial Analysis of Measure M" prepared by the city attorney described the revenue to be transferred from the utilities to the general fund under Measure M as "surplus" revenue that is "not necessary to pay for a utility's capital improvements, bond/debt service, operations and maintenance, personnel, reserves, and other costs."  At the June 5, 2018 general election, 53.76 percent of City voters approved Measure M.

On June 21, 2018, the Board passed a resolution fixing water and sewer rates effective October 1, 2018, raising rates for potable and recycled water by 7.2 percent, and leaving sewer rates unchanged.  In a Notice of Public Hearing for an August 30, 2018 hearing, the Water Department informed customers the proposed increase in water rates was due to the following:  "In June 2018, voters in the city of Long Beach passed Measure M, reauthorizing and affirming the City's historical practice of revenue transfers from the City's utilities to the General Fund, as approved by the City Council and Board of Water Commissioners. The revenue transfer is subject to a cap of twelve percent (12%) of each utility's annual gross revenues, as shown by audited

8

financial reports.  All proceeds from utility revenue transfers to the General Fund shall be used to maintain local General Fund services, which include general City services such as police, fire and paramedic response, street repair, parks, libraries and youth/senior programs."  On September 6, 2018, the City Council passed Ordinance No. ORD-18-0022, approving the rates fixed in the Board's June 21 resolution, including the potable and recycled water rates that were increased by 7.2 percent to fund the transfers to the City's general fund authorized by Measure M.

The Measure M surcharge, which the City characterizes as a general tax, is embedded in the Water Department customers' utility service charges and is not separately identified in the Water Department's bills to customers.  Thus, it is not possible to discern from looking at the bills what percentage of the customers' utility charges make up the Measure M surcharge.

As the City explains in its opening brief on appeal, the Measure M surcharge is "the part of the [water and sewer] rates that raises unrestricted revenue for the support of the City's general fund," not the part of the rates that is "designed to recoup the Water Department's costs of providing water and sewer service."  The City characterizes the surcharge as a tax because it "exceeds the Water Department's costs of providing water and sewer service," as the City explains in its opening brief.

## V.     The Present Action

On October 22, 2018, Plaintiffs filed in this action a verified petition for writ of mandate and complaint for declaratory and injunctive relief, asserting the Measure M surcharge violates article XIII D, section 6, subdivision (b) because the rate revenue collected through the surcharge "does not benefit the water or sewer utility, is not used for the provision of water and sewer

9

service, and is not a reimbursement of costs incurred in the General Fund for the benefit of the water and sewer utilities. Instead, such rate revenue is used for general governmental purposes." Plaintiffs further asserted, to the extent the City contends the Measure M surcharge is a general tax, article XIII D, section 3, subdivision (a) "precludes local governments from imposing general taxes upon any parcel [of property] or upon any person as an incident of property ownership."

By their first cause of action, Plaintiffs sought a writ of mandate directing the City (1) to invalidate the September 6, 2018 ordinance (Ordinance No. ORD-18-002) approving utility rates that include the Measure M surcharge; (2) to cease transferring proceeds from the surcharge to the City's general fund; (3) to return to the Water Department any proceeds already so transferred; and (4) to cease embedding the surcharge in water and sewer fees and charges. In their second cause of action for declaratory relief, Plaintiffs sought a judgment declaring the City violated article XIII D, section 3, subdivision (a), and section 6, subdivision (b), paragraphs (1)-(2) and (5), by imposing the Measure M surcharge. In their third cause of action for an injunction pursuant to Code of Civil Procedure section 526a, Plaintiffs sought a permanent injunction precluding Measure M transfers of funds from the Water Department and ordering the return to the Water Department of previously-transferred funds. Finally, Plaintiffs sought an award of attorney fees and costs.

After the City filed an answer to the petition for writ of mandate and complaint, Plaintiffs filed a motion asking the trial court to issue the requested writ of mandate, declaration, and permanent injunction. In their opening brief on the petition for writ of mandate, Plaintiffs argued the Measure M surcharge

10

violates article XIII D, section 3, subdivision (a), and section 6, subdivision (b), paragraphs (1)-(2) and (5), for the reasons asserted in their petition, as summarized above.[3]

In opposition to the petition for writ of mandate, the City argued article XIII D is inapplicable to a general tax imposed on the use of a property-related service (water and sewer) after approval by a majority of the City's voters pursuant to article XIII C. The City also conceded that to the extent a court concludes the Measure M surcharge is a fee or charge subject to article XIII D, the surcharge does not comply with article XIII D's requirements. The City's opposition brief below states: "[T]he City concedes that the general fund surcharges do not comply with article XIIID [*sic*], section 6(b)'s substantive requirements; after all, proceeds from the surcharges are not used to fund the City's water and sewer services, and instead are intended for 'general revenue purposes.'"

On January 2, 2020, the trial court held a hearing on Plaintiff's petition for writ of mandate and causes of action for declaratory and injunctive relief. After hearing argument by the parties, the court adopted its 24-page tentative ruling as its final decision, with oral modifications as set forth in the reporter's transcript of the hearing. The court concluded the Measure M surcharge violates article XIII D, section 6, subdivision (b)

---

[3] Plaintiffs also argued the Measure M surcharge violates article XI, section 7 to the extent the City collects the surcharge from water and sewer utility customers who receive service at a location outside the City. As stated above, we need not reach this issue because we conclude the surcharge is unconstitutional and invalid as to all customers under article XIII D, for the reasons set forth below.

11

because it "is a general tax imposed as an incident of property ownership and not a charge based on actual water usage. The surcharge is not required to provide the water and sewer service [(art. XIII D, § 6, subd. (b), ¶ (1))], is not used for that service [(art. XIII D, § 6, subd. (b), ¶ (2))], and only benefits the general community [(art. XIII D, § 6, subd. (b), ¶ (5))]." The court also concluded the Measure M surcharge violates article XIII D, section 3, subdivision (a) "because it is a charge as an incident of property ownership that does not fall under any of the enumerated exceptions" for a permissible fee or charge. The court explained article XIII D, section 3, subdivision (a) "ensures that the only levies that can be imposed on property ownership per se are an ad valorem tax, a special tax, an assessment, or some other levy that complies with the substantive requirements" of article XIII D, section 6, subdivision (b), and the Measure M surcharge does not fit within any of these categories. (Italics omitted.) The court rejected the City's contention that obtaining voter approval of Measure M pursuant to article XIII C rendered XIII D inapplicable to the surcharge, stating in its decision, "The answer is that [article XIII C] does not relieve the City from complying with [article XIII D], which carries independent constitutional requirements." Finally, the court concluded the City's imposition of a general tax (the Measure M surcharge) upon customers who receive water and sewer services at locations outside the City's boundaries violates article XI, section 7.

On February 7, 2020, the trial court entered judgment in favor of Plaintiffs and against the City, providing (1) the Measure M general tax is unconstitutional and invalid under article XIII D; (2) the Measure M general tax is unconstitutional and invalid under article XI, section 7, to the extent the City collects the

12

surcharge from water and sewer utility customers who receive service at a location outside the City; (3) "any transfers of the proceeds of the Measure M general tax from the City's Water Revenue Fund and Sewer Revenue Fund to its General Fund are unconstitutional and invalid" under article XIII D; and (4) "all City ordinances that establish and/or fix water or sewer rates, including, but not limited to, Ordinance No. 18-0022 and Ordinance No. 19-0018 [the then-current water and sewer rate ordinance, which became effective October 1, 2019], are unconstitutional and invalid to the extent that they embed or otherwise impose the Measure M general tax on the City's water and sewer utility customers." The judgment enjoined the City from making any further transfers of Measure M proceeds to its general fund. The judgment also ordered the issuance of a peremptory writ of mandate. On February 11, 2020, the clerk of the trial court issued a peremptory writ of mandate to the City, commanding it to set aside or rescind Ordinance No. ORD-19-0018 and return all prior transfers of Measure M proceeds from the City's general fund to the Water Revenue Fund and Sewer Revenue Fund.

The City appealed from the judgment. Pursuant to stipulation by the parties, the trial court stayed enforcement of the peremptory writ of mandate and the injunction, subject to certain enumerated conditions, pending resolution of this appeal.

The parties stipulated to an award of attorney fees to Plaintiffs. On May 27, 2020, the trial court entered an order awarding attorney fees based on the stipulation. The City appealed from the order, seeking reversal of the attorney fees award to the extent this court reverses the judgment in favor of Plaintiffs on the merits.

13

Amicus curiae League of California Cities (Cal Cities) filed in this appeal a brief in support of the City, and Plaintiffs filed an answer to the amicus curiae brief. Cal Cities describes itself as "an association of 476 California cities dedicated to protecting and restoring local control to provide for the public health, safety, and welfare of their residents and enhance the quality of life for all Californians." We have considered this additional briefing in analyzing the matter before us.

## DISCUSSION

The City contends the trial court erred in invalidating the Measure M surcharge, arguing "a voter-approved general tax on the use of municipal water and sewer service" is not a fee or charge subject to article XIII D's restrictions. We disagree with the City's interpretation of article XIII D's scope and conclude the trial court properly found in favor of Plaintiffs and against the City.

## I.    Standard of Review

Whether the Measure M surcharge violates article XIII D is a question of law that we review de novo based on the undisputed facts. (*Apartment Assn.*, *supra*, 24 Cal.4th at p. 836; *Tesoro Logistic Operations, LLC v. City of Rialto* (2019) 40 Cal.App.5th 798, 806 (*Tesoro*).)

In construing article XIII D, "The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue. [Citation.] To determine that intent, we begin by examining the constitutional text . . . ." (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418 (*Richmond*).) " 'The principals of constitutional interpretation are similar to those governing statutory construction.' [Citation.] If the language [of the

14

constitutional text] is clear and unambiguous, the plain meaning governs. [Citation.] But if the language is ambiguous, we consider extrinsic evidence in determining voter intent, including the Legislative Analyst's analysis and ballot arguments for and against the initiative." (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444-445 (*Silicon Valley*).) We conclude the language of article XIII D is clear and unambiguous. In evaluating the issue before us, however, we quote California Supreme Court authority, which references extrinsic evidence, such as the Proposition 218 Legislative Analyst's analysis.

## II. The Measure M Surcharge Violates Article XIII D

### A. Article XIII D, section 3

Article XIII D, section 3 provides:

"Property Taxes, Assessments, Fees and Charges Limited. (a) No tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership except:

"(1) The ad valorem property tax imposed pursuant to Article XIII and Article XIII A.

"(2) Any special tax receiving a two-thirds vote pursuant to Section 4 of Article XIII A.

"(3) Assessments as provided by this article.

"(4) Fees or charges for property related services as provided in this article.

"(b) For purposes of this article, fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership."

The word "agency," as used in article XIII D "means any local government," including a charter city. (Art. XIII D, § 2,

15

subd. (a); art. XIII C, § 1, subd. (b).)[4]  "Property ownership" is defined in article XIII D "to include tenancies of real property where tenants are directly liable to pay the assessment, fee, or charge in question."  (*Id*. at § 2, subd. (g).)[5]  A "property-related service" for purposes of article XIII D, "means a public service having a direct relationship to property ownership."  (*Id*. at § 2, subd. (h).)

### B.    Article XIII D, section 6

Article XIII D, section 6 provides, in pertinent part:

"(b)  Requirements for Existing, New or Increased Fees and Charges.  A fee or charge shall not be extended, imposed, or increased by any agency unless it meets all of the following requirements:

"(1) Revenues derived from the fee or charge shall not exceed the funds required to provide the property related service.

---

[4] Cal Cities asserts in its amicus curiae brief that "voter approval takes [a tax, like the Measure M surcharge,] outside article XIII D, as such a tax is not imposed by an 'agency,' but by voters."  Not so.  As our Supreme Court has explained, when an agency places a measure on the ballot for voter approval—as the City did here—it is the agency, not voters, that assesses or imposes the tax, assessment, fee, or charge within the meaning of article XIII D.  (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 940-941, 942 ["that a local government's imposition of a general tax 'will not take effect' absent subsequent approval by the voters" does not mean it is the voters, as opposed to the local government, who impose the tax].)

[5] Thus, "article XIII D broadly defines ownership to include rental interests."  (*Howard Jarvis Taxpayers Assn. v. City of Fresno* (2005) 127 Cal.App.4th 914, 925, fn. 3 (*Fresno*).)

16

"(2) Revenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed.

[¶] . . . [¶]

"(5) No fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners. . . . In any legal action contesting the validity of a fee or charge, the burden shall be on the agency to demonstrate compliance with this article."

"Fee" or "charge," as used in article XIII D "means any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." (Art. XIII D, § 2, subd. (e).) As our Supreme Court has explained, "Because article XIII D provides a single definition that includes both 'fee' and 'charge,' those terms appear to be synonymous," and may be used interchangeably. (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 214, fn. 4 (*Bighorn*).)

C.    **The City imposed the Measure M surcharge as an incident of property ownership**

As set forth above, article XIII D, section 3, subdivision (a) prohibits an agency from assessing a tax, fee, or charge "upon any parcel of property or upon any person as an incident of property ownership," with limited exceptions. Article XIII D, section 6, subdivision (b) places restrictions on an agency's imposition of a fee or charge "upon a parcel or upon a person as an incident of property ownership, including a user fee or charge

17

for a property related service." (Art. XIII D, § 2, subd. (e).) Whether the Measure M surcharge is imposed upon a parcel or upon a person as an incident of property ownership is the key dispute between the parties to be resolved in this appeal. The City has acknowledged the Measure M surcharge does not comply with article XIII D, section 6, subdivision (b)'s requirements applicable to fees or charges imposed upon a parcel or upon a person as an incident of property ownership, as set forth more fully below.

As our Supreme Court explained in *Apartment Assn.*, "article XIII D only restricts fees imposed directly on property owners in their capacity as such." (*Apartment Assn.*, *supra*, 24 Cal.4th at p. 838.) "In other words, taxes, assessments, fees, and charges are subject to the constitutional strictures [of article XIII D] when they burden landowners *as landowners*." (*Id*. at p. 842.) The Supreme Court in *Apartment Assn.* concluded an inspection fee imposed on private landlords by city ordinance was not a fee upon a parcel or upon a person as an incident of property ownership, within the meaning of article XIII D, because the fee was imposed on landlords "by virtue of their ownership of a business—i.e., because they [were] landlords," not because they were property owners. (*Apartment Assn.*, at p. 842.) The fee was "imposed only on those landlords who [chose] to engage in the residential rental business, and only while they [were] operating the business." (*Id*. at p. 840.) In other words, the fee was "imposed because the property [was] being rented. It cease[d] along with the business operation, whether or not ownership remain[ed] in the same hands." (*Id*. at p. 838; cf. *Tesoro*, *supra*, 40 Cal.App.5th 798, 801, 814 ["an 'annual business license tax' of 'up to One Dollar [($1.00)] per year for each One (1) cubic foot of

18

liquid storage capacity' on '[a]ny person engaged in the business of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility' in the City" violated article XIII D, section 3 because it was "a tax on real property and on persons, namely, owners of wholesale liquid fuel storage facilities, as an incident of owning the facilities," "regardless of whether the facilities or the storage tanks [were] used in any business operations," and no exception set forth in section 3 applied].)

The City characterizes the Measure M surcharge as a valid "utility users tax, or an excise tax levied on the use of utility services—including water and sewer service." The City argues the surcharge is not imposed upon a parcel or upon a person as an incident of property ownership, within the meaning of article XIII D, because one may own real property without obtaining water or sewer service. Case law does not support the City's view.

In *Richmond*, *supra*, 32 Cal.4th 409, our Supreme Court held "a charge that a local water district imposed as a condition of making a new connection to the water system, and that the district used to finance capital improvements to the water system," was not subject to article XIII D's restrictions, as the district did not "impose the capacity charge on real property as such, but on individuals who apply for new service connections." (*Richmond*, at pp. 415, 420.) The Court "conclude[d] that a water service fee is a fee or charge under article XIII D if, but only if, it is imposed 'upon a person as an incident of property ownership.' (Art. XIII D, § 2, subd. (e).) A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than

19

normal ownership and use of property. But a fee for making a new connection to the system is not imposed 'as an incident of property ownership' because it results from the owner's voluntary decision to apply for the connection." (*Richmond*, at p. 427.)

The Court in *Richmond* explained that the Proposition 218 "Legislative Analyst apparently concluded that water service has a direct relationship to property ownership, and thus is a property-related service within the meaning of article XIII D because water is indispensable to most uses of real property; because water is provided through pipes that are physically connected to the property; and because a water provider may, by recording a certificate, obtain a lien on the property for the amount of any delinquent service charges [citation]. But the Legislative Analyst was apparently referring to fees imposed on existing water service customers, not fees imposed as a condition of initiating water service in the first instance.

"Several provisions of article XIII D tend to confirm the Legislative Analyst's conclusion that charges for utility services such as electricity and water should be understood as charges imposed 'as an incident of property ownership.' For example, subdivision (b) of section 3 provides that 'fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership' under article XIII D. Under the rule of construction that the expression of some things in a statute implies the exclusion of other things not expressed [citation], the expression that electrical and gas service charges are not within the category of property-related fees implies that similar charges for other utility services, such as water and sewer, are property-related fees subject to the

20

restrictions of article XIII D." (*Richmond*, *supra*, 32 Cal.4th at pp. 426-427.)

In *Bighorn*, *supra*, 39 Cal.4th 205, a case in which our Supreme Court held article XIII C, section 3 "grants local voters a right to use the initiative power to reduce the rate that a public water district charges for domestic water," the Court cited with approval the above-quoted principles from its opinion in *Richmond*. (*Bighorn*, at pp. 209, 214-215.) In analyzing the issue presented to it under article XIII C, the Court in *Bighorn* reiterated its conclusion in *Richmond* "that a public water agency's charges for ongoing water delivery . . . are fees and charges within the meaning of article XIII D." (*Bighorn*, at p. 216.)

In *Fresno*, *supra*, 127 Cal.App.4th 914, the Fifth District Court of Appeal relied on the Supreme Court's analysis in *Richmond* in concluding a fee " 'in lieu of property and other taxes normally placed upon private business,' " imposed "by Fresno on its utility departments and divisions, and passed through to ratepayers [by blending it into the user fees], [was] a fee subject to the restrictions of article XIII D, section 6" because it was imposed as an incident of property ownership. (*Fresno*, at pp. 917, 918, 925, 926.) The appellate court rejected Fresno's argument—identical to the City's argument here—that the fee was " 'imposed on the use of utility services,' " rather than " 'solely on the basis of property ownership.' "[6] (*Id.* at p. 925; see

_____

[6] The City attempts to distinguish *Fresno* based on differences between Fresno's charter and the City's charter, for example, the fact Fresno's charter expressly prohibited Fresno from taxing any person for using a utility service. (*Fresno*, *supra*, 127 Cal.App.4th at p. 926.) The facts the City cites are not

21

also *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 647 [Third District Court of Appeal held article XIII D applied to in lieu franchise fee of four percent on water, sewer, and refuse collection utilities' annual budgets, paid by ratepayers and transferred to Roseville's general fund, as the fee was "necessarily tied to property ownership"]; *Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 408 ["Ordinance's fee for the collection of household hazardous waste is imposed 'as an incident of property ownership' " because it is imposed on each household in the county and " 'vacant [h]ouseholds also require household hazardous waste collection and disposal in connection with property improvements, maintenance, or landscaping.' Thus, the fee requires nothing other than normal ownership and use of property"].)

Following our Supreme Court's guidance, we conclude the City imposed the Measure M surcharge upon a parcel or upon a person as an incident of property ownership, within the meaning of article XIII D. "A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property." (*Richmond*, *supra*, 32 Cal.4th at p. 427.) Because the Measure M surcharge therefore qualifies as a "levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee

germane to our analysis of whether the Measure M surcharge is imposed upon a parcel or upon a person as an incident of property ownership, and violates article XIII D, and we need not address such facts further.

or charge for a property related service," it satisfies the definition of "fee" or "charge" in article XIII D.  (Art. XIII D, § 2, subd. (e).)

**D.    The Measure M surcharge must comply with article XIII D, section 6, subdivision (b)'s requirements regardless of voter approval**

As set forth above, and as relevant to the parties' dispute here, article XIII D, section 6, subdivision (b) requires that "[r]evenues derived from the fee or charge shall not exceed the funds required to provide the property related service"; "[r]evenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed"; and "[n]o fee or charge may be imposed for general governmental services, including but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners."  (Art. XIII D, § 6, subd. (b), ¶¶ (1), (2) & (5).)

The City argues article XIII D, section 6, subdivision (b)'s restrictions on fees and charges are inapplicable to the surcharge at issue here because Measure M was approved by a majority of the City's voters pursuant to article XIII C, which requires voter approval of taxes imposed by local governments.  There is no language in article XIII C or article XIII D that supports the City's argument.  Article XIII D makes clear that regardless of whether the imposition is characterized as a *tax*, assessment, fee, or charge, if it is imposed upon a parcel of property or upon a person as an incident of property ownership—as we have concluded the Measure M surcharge is—it *must* satisfy one of the exceptions to the prohibition on an agency's imposition of a tax, assessment, fee, or charge upon a parcel of property or upon a person as an incident of property ownership, enumerated in

23

article XIII D, section 3.  The only exception relevant here is a fee or charge for a property-related service *that complies with the requirements of article XIII D, section 6, subdivision (b).*  (Art. XIII D, § 3, subd. (a), ¶ (4).)[7]  There is no exception for a *voter-approved* tax, assessment, fee, or charge imposed upon a parcel of property or upon a person as an incident of property ownership that does not satisfy one of the four enumerated exceptions in article XIII D, section 3, subdivision (a).  Indeed, article XIII D, section 6, subdivision (c) has its own voter approval requirements for certain property-related fees and charges (not applicable here), which do not obviate subdivision (b)'s requirements for a valid property-related fee or charge.  (Art. XIII D, § 6, subd. (c) ["Voter Approval for New or Increased Fees and Charges.  Except for fees or charges for sewer, water, and refuse collection services, no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area"].)

Thus, voter approval of Measure M pursuant to article XIII C does not rescue the City from an independent constitutional violation of article XIII D.  (See *Silicon Valley, supra,* 44 Cal.4th at p. 449 ["voter consent cannot convert an unconstitutional

_____

[7] The other exceptions to the prohibition on an agency's imposition of a tax, assessment, fee, or charge upon a parcel of property or upon a person as an incident of property ownership are for an ad valorem property tax, a special tax receiving a two-thirds vote, and an assessment.  (Art. XIII D, § 3, subd. (a), ¶¶ (1)-(3).)  The City does not dispute that none of these other exceptions applies here.

24

legislative assessment into a constitutional one"].)  The cases the City cites in support of its position are inapposite.

For example, in *Capistrano Taxpayers Assn. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493 (*Capistrano*), the Fourth District Court of Appeal held Proposition 218 allows "public water agencies to pass on to their customers the capital costs of improvements to provide additional increments of water," but Proposition 218 also "requires public water agencies to calculate the actual costs of providing water at various levels of usage" under article XIII D, section 6, subdivision (b), paragraph (3)—a provision not pertinent to the parties' dispute here. (*Capistrano*, at p. 1497.)  The City relies on *Capistrano* for the following dicta set forth in the conclusion of the appellate court's opinion:

"The way Proposition 218 operates, water rates that exceed the cost of service operate as a tax, similar to the way a 'carbon tax' might be imposed on use of energy.  But, we should emphasize:  Just because such above-cost rates are a tax does not mean they cannot be imposed—they just have to be submitted to the relevant electorate and approved by the people in a vote. There is no reason, for example, why a water district or local government cannot, consistent with Proposition 218, seek the approval of the voters to impose a tax on water over a given level of usage—as we indicated earlier, that might be a good idea. However, if a local government body chooses to impose tiered rates unilaterally without a vote, those tiers must be based on cost of service for the incremental level of usage, not predetermined budgets.  (For the moment, of course, we need not decide whether such a proposed tax would constitute a general

25

tax or special tax.)" (*Capistrano, supra*, 235 Cal.App.4th at p. 1515.)

The court in *Capistrano* did not analyze the tax it proposed to determine if it might qualify as a valid special tax under article XIII D, section 3, subdivision (a), and we have no cause to engage in that undertaking. Suffice it to say, we conclude the Measure M surcharge at issue here is a fee or charge imposed upon a parcel of property or upon a person as an incident of property ownership, that was not approved by two-thirds of the City's voters (and is not an ad valorem tax or an assessment), and therefore must comply with article XIII D, section 6, subdivision (b)'s requirements in order to be valid. (Art. XIII D, § 3, subd. (a).)

The City also cites *Redding, supra*, 6 Cal.5th 1, a case in which our Supreme Court concluded an electric utility's transfer of utility funds to Redding's general fund did not result in an increase in rates customers paid, and the customers' rates did not exceed the reasonable costs of providing electric service, so voter approval of the rates was not required pursuant to article XIII C. (*Redding*, at pp. 4-5, 15.) In analyzing the issue, the Supreme Court did not interpret article XIII D. As set forth above, article XIII D expressly states: "For purposes of this article, fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership." (Art. XIII D, § 3, subd. (b).) Nonetheless, the City cites the following language the Court used in *Redding* in discussing article XIII C in relation to the facts of that case: "[F]or any service charge to which the article [art. XIII C] applies, a local government must either charge a rate that does not exceed the reasonable costs of providing the service *or obtain voter approval for rates that exceed*

26

*costs.*" (*Redding*, at p. 18, italics added.) This language has no applicability here, as charges for water and sewer service—like those at issue here—are not excluded from article XIII D's definition of fee or charge.

### E. The City has conceded the Measure M surcharge is not a valid fee or charge under article XIII D, as it does not comply with subdivision (b)'s requirements

The City has acknowledged that to the extent article XIII D applies to the Measure M surcharge—as we concluded above—the surcharge is unconstitutional because it does not comply with article XIII D, section 6, subdivision (b)'s requirements. The City's opposition brief in the trial court states: "[T]he City concedes that the [Measure M] general fund surcharges do not comply with article XIIID [*sic*], section 6(b)'s substantive requirements; after all, proceeds from the surcharges are not used to fund the City's water and sewer services, and instead are intended for 'general revenue purposes.'" Similarly, the City's opening brief on appeal asserts: "Because the proceeds of a general tax [referring to the Measure M surcharge] are used for general governmental purposes [citation], and the proceeds of a 'fee' or 'charge' may only be used to provide the service for which the 'fee' or 'charge' is collected [citing art. XIII D, § 6, subd. (b), par. (2)], general taxes can never satisfy the substantive limitations applicable to 'fees' and 'charges.'"

The City made no attempt to prove the Measure M surcharge complies with article XIII D, section 6, subdivision (b)'s requirements, relying instead and solely on its argument article XIII D does not apply to a voter-approved general tax imposed on the use of municipal water and sewer services, an argument we

27

have rejected. For example, the City did not attempt to demonstrate any correlation between the Measure M transfers from the Water Department to the City's general fund/the Measure M surcharge, and the costs to the City associated with the Water Department's use of the City's infrastructure. (See art. XIII D, § 6, subd. (b), ¶ (1) ["Revenues derived from the fee or charge shall not exceed the funds required to provide the property related service"].) As the record before us shows, and the City acknowledges in its briefing, the purpose of Measure M is to raise unrestricted revenue to support a variety of municipal services (9-1-1 emergency response, police/fire protection, street/pothole repairs, senior services, parks, and libraries), not to reimburse the City for costs associated with the Water Department's use of the City's infrastructure.

In this regard, the matter before us is distinguishable from *Wyatt v. City of Sacramento* (2021) 60 Cal.App.5th 373, a recent Third District Court of Appeal case on which the City relies in support of its contention a city's voter-approved general tax on utility services, to fund transfers to the city's general fund, does not violate article XIII D. In *Wyatt*, Sacramento argued—and the Court of Appeal concluded Sacramento proved—a voter-approved mandatory 11 percent tax Sacramento imposed on utilities' revenues was a *cost of providing services* that the utilities could pass on to ratepayers without violating article XIII D, section 6, subdivision (b). (*Wyatt*, at pp. 378, 380, 383.) We express no opinion on whether *Wyatt* was correctly decided. We note only that *Wyatt*'s analysis is inapplicable to the case before us because the City here never argued, and there is nothing in the record indicating, the Measure M transfers and/or surcharge were in

28

any way related to the costs of providing water and sewer services.

As it pertains to whether the City proved—or even attempted to prove—the Measure M surcharge complies with article XIII D, section 6, subdivision (b)'s requirements, this case is more similar to *Fresno, supra*, 127 Cal.App.4th 914, where the Court of Appeal explained: "On the current record . . . Fresno has not even *claimed* the in lieu fee approximates the cost of city services to the utility departments and divisions, much less has it established such a relationship as a fact. (See art. XIII D, § 6, subd. (b)(5) [allocating to governmental agency burden to demonstrate compliance with art. XIII D].) Accordingly, the trial court correctly issued an injunction to prohibit Fresno from collecting the current 1 percent in lieu fee from the water, wastewater, and solid waste divisions of the department of public utilities." (*Fresno*, at p. 927.)

Based on the City's concessions that the Measure M surcharge does not comply with article XIII D, section 6, subdivision (b)'s requirements, and the absence of anything in the record before us indicating such compliance, we need not address this issue further. The Measure M surcharge is a fee or charge within the meaning of article XIII D, section 6, and the City has not carried its burden of demonstrating compliance with subdivision (b)'s requirements. (Art. XIII D, § 6, subd. (b), ¶ (5) ["In any legal action contesting the validity of a fee or charge, the burden shall be on the agency to demonstrate compliance with this article"].) Thus, we hold the Measure M surcharge is unconstitutional because it violates article XIII D.

The City and Cal Cities assert the invalidation of the Measure M surcharge on these grounds will mean the

29

invalidation of numerous taxes imposed by local governments throughout California.  The only tax, fee, or charge before us is the Measure M surcharge.  We express no opinion on the validity of taxes not before us.

Because we conclude the Measure M surcharge violates article XIII D as to *all* Water Department customers, for the reasons explained above, we need not determine whether the trial court correctly decided the surcharge also violates article XI, section 7 to the extent the City collects the surcharge from water and sewer utility customers who receive service at a location outside the City.  And because we affirm the judgment on the merits, we have no cause to reverse the stipulated award of attorney fees to Plaintiffs.

## DISPOSITION

The judgment and post-judgment order awarding attorney fees are affirmed.  Respondents are entitled to recover costs on appeal.

CERTIFIED FOR PUBLICATION

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.